LININGER et al., Respondents
v.
BLACK HILLS GREYHOUND RACING ASSOCIATION, Appellant

(149 N.W.2d 413)

(File No. 10304. Opinion filed March 21, 1967)

508

**Roswell Bottum,** Rapid City, for plaintiffs and respondents.

**Joseph M. Butler, Bangs, McCullen, Butler & Foye,** Rapid City, for defendant and appellant.

BIEGELMEIER, Judge.

Defendant executed a written Option for plaintiffs to purchase real estate; plaintiffs gave notice of election to exercise the Option and later tendered and deposited the purchase price in a bank. Defendant declined to complete the sale and in the action to compel specific performance the trial court granted the relief sought. Defendant appeals.

The Option required the election to purchase to be signified by written notice served at the office of defendant association, a corporation "in Rapid City, South Dakota", without further identifying its location. One of defendant's contentions is notice was not given or served in the manner required. It was stipulated the Notice of Election and an attached copy of a letter dated September 21, 1964, were served on defendant by mailing them on September 23, 1964, in the regular course of mail at Rapid City, South Dakota, correctly addressed to defendant at its P.O. Box 2044, Rapid City, South Dakota; copies also were mailed to the President as such and one addressed to the company in care of the President, both at his proper post office address; also by leaving a copy in the office of the secretary of defendant corporation in Rapid City, South Dakota in the presence of his employee, he being absent from the city. Al-

most completing the circle copies were served on another person (who admitted service in writing), the then attorney for defendant, whose signature appears on the Option as, and the notary states in the acknowledgment to be, the secretary of the corporation. Defendant asserts this was not compliance as it was not served at the place required—at defendant's office. It does not appear defendant had an office other than that of its secretary.[1] The record does show a letter dated and mailed September 9, 1964, addressed to defendant care of its attorney was received by it the next day, and another letter addressed to it with only a Rapid City, South Dakota address, was received and offered in evidence by it.

Defendant contends it must be shown the notice be actually received at its office. We believe the evidence does show that. Defendant did not deny receiving the notices. The court properly found plaintiffs had advised defendant they were exercising the Option.

It is next urged there was no unconditional, unequivocal, unambiguous acceptance in that one of the notices demanded a warranty deed and was served with and supplemental to the September 21, 1964 attached letter which required an abstract and neither of these were provided for in the Option Agreement. It appears the agreement included about 800 acres of land shown by many descriptions of the tracts involved. It provided in some detail plaintiffs could exercise the Option to purchase any ten acre tract or tracts at specified prices and terms and if the Option was exercised either as to all of the property or any of the ten acre tracts, defendant would give good and merchantable title to the property, free and clear of all taxes and incumbrances and convey the same by deed. These clauses were then immediately followed by a statement defendant "does not intend to furnish any abstracts with reference to the separate parcels of property to which this option may be exercised."

The record shows an "entire" abstract of title was delivered by defendant's attorney to plaintiffs' attorney and was in

---

1. The September 21, 1964 letter sent to defendant on plaintiffs' behalf stated plaintiffs were advised, apparently by defendant's President, "that the Association had no office excepting a post office box" to which one of the notices was mailed.

his possession. The trial court's judgment required defendant to deliver plaintiffs an abstract of title continued to date of delivery of the deed, showing good and marketable title to the property. The agreement in expressly exempting defendant from furnishing abstracts for separate parcels or ten acre tracts was subject to the construction placed on it by the trial court that such abstract would be furnished if the Option was exercised, as it was, to purchase all the property described in the Option.

Turning to the request for a deed, as indicated above, the acceptance of the Option involved other written instruments which tend to shed light on that feature. By a certified letter of September 9, 1964, defendant was notified plaintiffs exercised their rights in the Option Agreement dated August 21, 1962, and they "interpreted" it to provide among other things for merchantable title and conveyance to them by "proper deed". The Notice of Election dated September 23, 1964, stated plaintiffs elected to exercise the Option and tendered the amount due; it demanded a warranty deed conveying a good and merchantable title to the property described in the Option "in accordance with the conditions of said Option Agreement". It further stated the notice was given "in conjunction with and supplemental" to the Notice of Intention to exercise said Option given in the form of the letter dated September 21, 1964, theretofore mailed to defendant, a copy of which was attached and made a part thereof. This letter referred to the September 9, 1964 letter and then stated plaintiffs exercised the Option and authorized their named attorney to do so and, among other things, to "accept a Deed" to the property described therein.

On September 24, 1964, plaintiffs deposited[2] to the credit of defendant the purchase price of $25,250 in a Rapid City Bank as appears from a deposit slip and Notice of Deposit addressed to and served on defendant. The notice referred to the Option and stated the deposit was made subject to performance by defendant of the conditions on its part to be performed as prescribed

---

2. The Option gave plaintiffs 15 days after exercising the Option to make payment. See SDC 47.0209 permitting deposit in a bank as extinguishing obligation of payment and Herman v. Winter, 20 S.D. 196, 105 N.W. 457.

in the Option Agreement, "namely the conveyance by deed" of the real property. Exhibit B, the September 19, 1964 letter above mentioned, signed by plaintiffs authorized their attorney named therein to exercise the Option, pay over the $25,250 and "accept the deed to us as therein provided". Thus it appears there were several communications involved in the acceptance and some difficulty or misunderstanding of the defendant's offices and officers, none of whom appeared at the trial.

In Cameron v. Scherf, 75 S.D. 223, 62 N.W.2d 884, plaintiffs' written notice of exercise of an option to purchase contained a " 'demand (of) a warranty deed' " and when defendant's lawyer said defendant did not have to give it, plaintiffs' lawyer responded they meant a good deed. The trial court's judgment requiring either a warranty deed as provided in SDC 51.1419 or a deed in form as provided by SDC 51.1420 was affirmed. Here the trial court directed defendant to convey the property by deed in conformity with the Option, free and clear of all taxes etc., without requiring a warranty deed.

The court's findings on the above features are based on substantially undisputed evidence and support the court's conclusion that, from all the written communications, plaintiffs had duly exercised their Option, duly tendered the purchase price therefor within the time prescribed and the judgment requiring a deed as stated was proper.

Among other provisions the judgment required the conveyance to be made free and clear of all taxes, including the 1964 taxes. Defendant asserts there is no provision in the Option requiring it to pay taxes which have not become liens; that assuming plaintiffs had properly exercised the Option, the duty to deliver a deed occurred on September 25, 1964, at which time they were not a lien. Defendant is correct in this last statement for SDC 57.0701 declares as between vendor and vendee, taxes become a lien upon real property on and after the first day of January of the year they are assessed. The 1964 taxes did not become a lien until January 1, 1965, cf. Salvation Army v. Barnett, 80 S.D. 379, 124 N.W.2d 365, and if defendant had performed the Option Agreement by executing and delivering the

deed in September 1964 it would not have been required to pay the 1964 taxes. However, it does not follow it may avoid payment under the facts present. Mitchell v. Mutch, 189 Iowa 1150, 179 N.W. 440, the only case we have found on this question, supports the trial court's conclusion. There the vendor agreed to execute the deed on March 1, 1914, but refused to do so. An action for specific performance was commenced, tried and appealed to the Supreme Court, and on remand vendor was required to deliver a deed on March 1, 1918. Speaking generally on another phase of the appeal (the claim of vendor to collect interest), the court wrote:

"The vendor having wrongfully delayed the performance of the contract is not allowed to derive any advantage from his own fault."

Later, directly on the tax question, the opinion continues:

"A question is involved concerning the accruing taxes during the four-year period of delay. * * * So far as the taxes of 1913 are concerned, the vendor would have been liable for the payment of these under his contract * * * if the same had been delivered on March 1, 1914. The obligation has not been diminished by the delay of performance. * * * It is undoubtedly the general rule that the person who is in possession of land, claiming ownership and receiving the rents and profits thereon, is primarily liable for the payment of taxes. * * * In this case the appellant held both the legal title and the possession and received the rents and profits. Not only so, but under his contract he was bound to protect the legal title which he had covenanted to convey. Equity will treat the covenants of warranty of his deed as warranting the title against all incumbrances resulting from the acts of the vendor up to the date of delivery of his deed. In paying the annual taxes therefore appellant performed his own obligation and that alone. The appellee was under no obligation to pay taxes until he had obtained his title and his possession pursuant to his contract."

These are statements and applications of equitable principles with which we are in accord. Further, the trial court may adapt its relief to the state of facts existing at the time of the entry of the decree which was September 23, 1965. 81 C.J.S. Specific Performance § 157, p. 756. The 1964 taxes were then a lien and defendant had agreed to give a good title free and clear of all taxes. Whether it could have equitably disposed of or adjusted the rents, profits and taxes in some other manner is not presented nor does the judgment affect the parties' rights thereto since the entry thereof.

It follows the judgment appealed from should be and is affirmed.

All the Judges concur.