In the Matter of Robert J. MOELLEN-BECK, Sandra C. Moellenbeck, Debtors.

Bankruptcy No. 87–1258–D.

United States Bankruptcy Court, S.D. Iowa.

March 1, 1988.

---

Michael L. Roeder, Davenport, Iowa, for debtors.

Elizabeth A. Nelson, Des Moines, Iowa, Chapter 12 Trustee.

Clemens Werner, Davenport, Iowa, for Walcott Trust and Savings Bank.

John Monroe, Cedar Rapids, Iowa, for the Federal Land Bank of Omaha.

Robert Gallagher, Bettendorf, Iowa, for John Deere Co.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for Government.

## ORDER ON PRELIMINARY HEARING ON OBJECTION TO CHAPTER 12 PLAN

LEE M. JACKWIG, Chief Judge.

On October 8, 1987 a preliminary hearing on confirmation of plan and related matters was conducted in Davenport, Iowa. Michael Roeder appeared on behalf of the debtors. The following parties appeared and objected to the plan: Elizabeth Nelson, the Chapter 12 trustee; Terry Gibson on behalf of the United States Trustee; Clemens Werner on behalf of Walcott Trust and Savings Bank (Bank); Robert Gallagher on behalf of John Deere Company; and John Monroe on behalf of the Federal Land Bank of Omaha (FLB). While numerous objections were lodged against the debtors' plan, the issue for determination concerns the treatment and effect of an Internal Revenue Service (IRS) federal estate tax special use lien in the amount of $72,000.00. The interested parties were directed to submit stipulated facts and briefs on this issue by November 8, 1987. The matter was considered fully submitted on November 13, 1987.

## FACTUAL BACKGROUND

The debtors filed a Chapter 12 petition on May 7, 1987. At the time of filing, one of the debtors' assets was a 160 acre farm. Three liens are recorded against the property. A federal estate tax lien in the amount of $72,531.00 was filed on January 18, 1980. A mortgage in favor of the FLB was filed on May 27, 1980. A Deed of Trust in favor of the Bank was filed on September 23, 1986. The FLB obtained a subordination agreement from the IRS on April 30, 1980 which granted the FLB a first lien on the property to the extent of $132.000.00.

The federal estate tax lien arose out of the estate of Theodore A. Moellenbeck, who died on June 7, 1978, and by operation of sections 2032A and 6324B of the Internal Revenue Code. Section 2032A permits real property used for "farming purposes" to be valued for estate tax purposes on the basis of its use as a farm or business rather than on some speculative use. *See generally,* Bagleiter, *Section 2032A: Did We Save The Family Farm?,* 29 Drake L.Rev. 15 (1979–80). Section 6324B creates a lien in favor of the United States on any property which qualifies under section 2032A to protect the government's interest in the event a recapture tax or additional estate tax is imposed. The lien will become unenforceable after fifteen years provided that the qualified heir continues to employ the property for the qualified use. In this case the debtor, Robert J. Moellenbeck, is a qualified heir. If he continues to farm the property until June 7, 1993 the estate tax lien will be unenforceable.

On the schedules filed with their petition, the debtors list the IRS as a secured creditor with a claim in the amount of $72,000.00. The FLB is listed as a secured claimant in the amount of $167,000.00 and the Bank is scheduled as a secured claimant in the amount of $271,000.00. The value placed on the farm property by the debtors is $204,000.00 and appears to be disputed by both the FLB and the Bank.

The debtors' plan submitted for confirmation treats the FLB's debt as an allowed secured claim in the amount of $132,000.00. The debtors use the IRS estate tax lien to reduce the FLB's secured claim, resulting in an unsecured balance. The debtors' plan treats the Bank's debt as an allowed secured claim in the amount of $50,000.00 or the value of the separate 40 acre farm property. The Bank's third lien on the 160 acre farm is valued at zero due to the senior liens of the FLB and the IRS. The

plan makes no provision for treatment of the IRS estate tax lien and the IRS has not filed an objection to the plan.

## DISCUSSION

The FLB and the Bank object to the debtors' use of the IRS estate tax lien to reduce their allowed secured claims. They argue that the enforcement of the lien is contingent upon the cessation of farming before 1993 and that there is no reason to believe that enforcement will be triggered. They further argue that to allow the debtors to use the tax lien to reduce their claims while not providing for payments to the IRS unfairly prejudices their interests and will result in a windfall to the debtors when the lien is released. The FLB and the Bank admit a lack of authority on the issue but urge the court to apply general equitable principles.

The debtors assert that the fact that they may never be required to pay the estate tax lien is inconsequential. The debtors refer to 11 U.S.C. section 1225(a)(5) which requires that the plan must provide the secured creditor with property of a value equal to the allowed amount of the creditor's secured claim. The extent of a creditor's secured claim is analyzed pursuant to 11 U.S.C. section 506(a) which provides that an allowed claim is a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property." As a general rule, if there are liens against the property that are senior to the creditor's lien, the amount of debt secured by senior liens must be deducted in determining the extent to which the creditor holds a secured claim. 3 *Collier on Bankruptcy*, ¶ 506.04 at 506–19 (15th ed. 1986).

The flaw in the debtors' analysis is that a senior lien used to reduce the secured claim of a junior lienholder somehow must be treated in the plan of reorganization. *See In re Edwardson*, 74 B.R. 831, 835, 836 (Bankr.D.N.D.1987) (secured creditor's claim was reduced by the real estate taxes due but the debtors were directed to provide for the payment of those taxes in the plan). Although the IRS filed a proof

of claim indicating a secured claim in the amount of $72,531.00, the debtors' plan does not provide for payment of that claim or for lien retention by the IRS. As noted previously, the IRS has not objected to the plan nor have the debtors objected to the proof of claim. Presumably both the IRS and the debtors anticipate that the lien will never be enforced. This presumption is reasonable in light of the debtors' articulated intention to continue farming and to carry through a plan of reorganization.

Given the debtors' failure to treat the IRS estate tax lien in their plan and the unlikelihood at this point in time that the lien will be enforced, the debtors may not utilize the value of the tax lien to reduce the allowed secured claims of the Bank and the FLB. In the event that enforcement of the lien is triggered before 1993, the relative positions of the interested parties could be reassessed accordingly by this court (if the three year plan has not been completed) or by the appropriate nonbankruptcy court (if the case has been closed). Whereas the debtors in effect would gain $72,000.00 at the creditors' expense if the debtors reduced the secured claims of the Bank and the FLB, received a discharge upon completion of the three year plan and enforcement of the tax lien was not triggered by 1993.

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing discussion the court hereby finds that the debtors may not use the IRS estate tax lien to reduce the allowed secured claim of the Walcott Bank and the FLB.

THEREFORE, the objections to the debtors' plan filed on behalf of the Walcott Bank and the FLB with regard to this issue are sustained.

IT IS FURTHER ORDERED that the debtors shall file an amended plan consistent with this opinion within 30 days.