**In re BELLMAN FARMS, INC., Case No. 384–00017,**

**and**

**Charles Jarl Bellman, Case No. 382–00053, Debtors.**

**Bankruptcy Nos. 384–00017, 382–00053.**

United States Bankruptcy Court, D. South Dakota.

June 24, 1988.

Robert M. Ronayne, P.C., Aberdeen, S.D., for Federal Land Bank of Omaha.

William J. Pfeiffer, Aberdeen, S.D., for Bellman Farms, Inc., and Charles Jarl Bellman.

## MEMORANDUM DECISION

PEDER K. ECKER, Chief Judge.

This matter is before the Court on the objection of The Federal Land Bank of Omaha (FLB–O) to confirmation of the debtors' Chapter 12 plan. The debtors' plan stated that the FLB–O's first mortgage on real estate belonging to Bellman Farms, Inc., was subject to the county's priority claim for real estate taxes. FLB–O objected to this reduction in the amount of its secured claim, claiming that the taxes should be treated as an unsecured post-petition administrative claim.

The debtors have a long history in this Bankruptcy Court. Bellman Farms, Inc., filed its first Chapter 11 bankruptcy petition on December 1, 1981. That bankrupt-

cy case was dismissed on February 29, 1984. The individual debtor, Charles Jarl Bellman, filed a Chapter 11 petition on June 23, 1982. Bellman Farms, Inc., filed the present Chapter 11 petition on March 13, 1984. The corporation's second Chapter 11 case and that of the individual debtor are the cases presently consolidated for joint administration.

In December, 1987, this Bankruptcy Court entered its order converting the consolidated cases to Chapter 12. In the debtors' proposed Chapter 12 plan of reorganization, the secured claim of the FLB–O in 960 acres of real estate, owned by Bellman Farms, Inc., was reduced by the amount of real estate taxes, including interest and costs, due for the years 1981 through 1987. The FLB–O objected to this treatment of its secured claim, alleging that the taxes accrued post-petition and should be treated as an administrative claim, not as a lien with priority over the FLB–O's allowed secured claim.

Through pre-confirmation negotiation, the debtors and the FLB–O stipulated that the fair market value of the 960 acres of real estate, in which the FLB–O had a first mortgage, was $139,000. They also agreed that the total amount of taxes, interest, and advertising costs was $24,458.74, as of February 29, 1988 (March 1, 1988, was the effective date of the plan):

| | | Real Estate Taxes | |
| | | Interest/ Advertising | |
| Year | Principal | Costs* | Total |
| --- | --- | --- | --- |
| 1981 | $ 2,523.98 | $2,087.68 | $ 4,611.66 |
| 1982 | 2,312.96 | 1,543.93 | 3,856.89 |
| 1983 | 2,562.20 | 1,325.96 | 3,888.16 |
| 1984 | 2,362.10 | 868.11 | 3,230.21 |
| 1985 | 2,482.60 | 539.99 | 3,022.59 |
| 1986 | 2,896.05 | 209.99 | 3,106.04 |
| 1987 | 2,743.19 | –0– | 2,743.19 |
| Totals | $17,583.06 | $6,575.66 | $24,458.74 |

*Calculated through February 29, 1988.

On February 12, 1988, the debtors' plan was confirmed, reserving for later determination by this Court the question of the extent and amount of taxes, interest, and costs, if any, to be subtracted from the fair market value of the land, in order to determine the amount of the FLB–O's allowed secured claim. The Court finds that the matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

*Issue*: Whether the amount of real estate taxes due and owing should be deducted from the fair market value of the real property to determine the allowed amount of the FLB–O's secured claim, if the taxes are due and owing for the years 1981 through 1987.

*Discussion*: The debtors and the FLB–O seek a determination of the value of the FLB–O's secured claim in the Bellman Farms, Inc., bankruptcy case. This determination is governed by 11 U.S.C. § 506(a), which provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

There are three sources of limitation on the extent of a creditor's secured claim:

1) the allowed amount of the claim,
2) the value of the interest of the estate in the collateral, and
3) the value of the interest of the creditor in such interest of the estate.

3 *Collier on Bankruptcy* ¶ 506.04[1] at 506–16 (15th ed. 1988). The allowed amount of the claim generally is determined pursuant to 11 U.S.C. § 502. *Id.* The "value of the interest of the estate in the collateral" usually is the fair market value of the property, unless the debtor is a less-than-fee owner. *See id.* at 506–17, –18. In the present case, the parties agree on the allowed amount of the claim and the fair market value of the real property. Bellman Farms, Inc., also appears to own the real property in fee. The parties disagree, however, on the "value of the interest of the creditor" in the property.

The value of the creditor's interest in the collateral may be less than the fair market value of the collateral. *Id.* First, the amount of debt secured by any senior liens must be deducted from the value of the estate's interest in the collateral to determine the value of the creditor's secured claim. *Id.; see also Matter of Moellenbeck,* 83 B.R. 630, 632 (Bankr.S.D. Iowa 1988); *In re Courtright,* 57 B.R. 495, 498 (Bankr.D.Or.1986). Second, when an actual sale of the property is contemplated, the liquidation costs also must be deducted from the value of the estate's interest in the collateral. *See In re Gerhardt,* 88 B.R. 151 (Bankr.S.D.Ohio 1987). But if the debtor remains in possession of the collateral, these hypothetical costs should not be deducted from the value of the collateral. *See* 11 U.S.C. § 506(a) ("... value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property ..."); *see also Gerhardt,* 1987 Bankr. Lexis at 1913; *Courtright,* 57 B.R. at 497; *In re Cohen,* 13 B.R. 350, 353 (Bankr.E.D.N.Y.1981). In the present case, no sale of the real estate is contemplated and, thus, the extent of the FLB–O's secured claim would be limited only by any senior liens, including property tax liens.

In the matter at issue, the amount of real estate taxes will reduce the FLB–O's secured claim, if the county taxing authority has a prior, perfected lien for the payment of these taxes. Contrary to the debtors' contention, the county must have a lien on the property for the payment of the taxes, because the creditor's secured claim can only be reduced by *prior, secured* claims. *See In re Richardson,* 82 B.R. 872, 873–74 (Bankr.S.D.Ohio 1987) (the amounts of the first and second mortgages must be subtracted from the value of property to determine the value against which a junior judicial lien could be asserted); *In re Mitchell,* 75 B.R. 593, 597 (Bankr.E.D.Pa. 1987) (the fair market value of the collateral must be reduced by prior city liens to determine the amount of the junior creditor's secured claim); *In re Fluharty,* 7 B.R. 677, 679 (Bankr.N.D.Ohio 1980) (the amounts of three prior mortgages must be subtracted from the value of the collateral to determine the value remaining for the satisfaction of junior judicial liens). State law determines whether a lien is properly perfected. *In the Matter of Higgins,* 304 F.Supp. 108, 110 (D.S.D.1969). Nonbankruptcy law also determines the priority of competing liens. *In re Darnell,* 834 F.2d 1263, 1269 (6th Cir.1987). Therefore, South Dakota law must be examined to determine if the county has any prior, perfected real estate tax liens on the 960 acres belonging to Bellman Farms, Inc.

The South Dakota statutes authorizing counties to assess, levy, and perfect real estate tax liens are found in Title 10 of the South Dakota Codified Laws. All real property subject to taxation shall be listed and assessed annually during the first six months of each year. S.D.C.L. § 10–6–2 (1982). Tax levies then are made by the county in September of each year. S.D.C. L. § 10–12–8 (Supp.1987). After the taxes are levied, the county auditor makes out a tax list for each assessment district. S.D. C.L. § 10–17–1 (1982). The auditor attaches to each tax list his warrant, requiring the county treasurer to collect the taxes levied. S.D.C.L. § 10–17–8 (1982). The tax lists then are delivered on or before the first day of January to the county treasurer for collection. S.D.C.L. § 10–17–7 (Supp.1987). On the first day of January, the taxes assessed for the previous year become due and owing and also become a lien upon the real property. S.D.C.L. § 10–19–1 (1982); *see also Salvation Army v. Barnett,* 80 S.D. 379, 382, 124 N.W.2d 365, 367 (1963). The tax lien that is created by virtue of S.D.C.L. § 10–9–1 is superior to all other liens except those liens in favor of the United States and the State of South Dakota. *See* S.D.C.L. § 10–19–2 (Supp.1987); *see also Hughes County v. Henry,* 48 S.D. 98, 104, 202 N.W. 286, 288 (1925), *citing Miller v. Anderson,* 1 S.D. 539, 543, 47 N.W. 957, 959 (1891). It is quite clear from the South Dakota statutes and case law that real estate tax liens do not arise and become superior liens until the time the taxes become due and owing,

on January 1 following the year of assessment. *See Lininger v. Black Hills Greyhound Racing Ass'n,* 82 S.D. 507, 512, 149 N.W.2d 413, 416 (1967); *Salvation Army,* 80 S.D. at 382, 124 N.W.2d at 367.

No further steps, acts, or proceedings by the county are necessary to perfect the tax lien against the owner, prior encumbrancers, or subsequent lienors. Title 10 does not require the filing of a notice, certificate, or statement by the county. In contrast, mechanic's liens shall cease after 120 days unless a statement is filed with the county register of deeds or with the secretary of state. *See* S.D.C.L. § 44–9–15 (1983). In addition, federal tax liens on real property must be perfected by filing a notice in the office of the register of deeds of the county in which the real property, subject to the federal tax lien, is situated. S.D.C.L. § 44–7–1 (1983); *see also* 26 U.S.C. § 6321 (notice of federal tax lien on real property must be filed in an appropriate state office). But South Dakota law provides no procedure by which the county must perfect its real property tax lien on January 1, other than the delivery of the tax list to the county treasurer with the attached warrant of the county auditor. There is no indication here that the list was not delivered, with the appropriate warrant. Consequently, the tax lien, as provided in S.D.C.L. § 10–19–1, arises and is perfected automatically on that date.

In the instant case, debtor Bellman Farms, Inc., filed its first Chapter 11 bankruptcy petition on December 1, 1981. It appears that no tax liens existed against the 960 acres on that date. The 1981 property taxes had been assessed and levied, but did not become due and owing until January 1, 1982.

■ The filing of the Bellman Farms, Inc., petition created an automatic stay preventing the creation and perfection of any property tax liens. Pursuant to 11 U.S.C. § 362(a)(4), the filing of a bankruptcy petition operates as a stay of "any act to create, perfect, or enforce any lien against

property of the estate...." 11 U.S.C. § 362(a)(4). It is well established that this provision blocks the creation or perfection of a tax lien.[1] *See In the Matter of Ballentine Bros., Inc.,* 86 B.R. 198 (Bankr.D. Neb.1988); *In re Cummings Market, Inc.,* 53 B.R. 224, 225 (Bankr.D.Vt.1985); *In re Carlisle Court, Inc.,* 36 B.R. 209, 214 (Bankr.D.D.C.1983). As a result, the county taxing authority was prevented from creating and perfecting a lien for unpaid property taxes for the years 1981, 1982, and 1983, throughout the pendency of the first Bellman Farms, Inc., Chapter 11 proceeding.

■ On February 29, 1984, the first Bellman Farms, Inc., Chapter 11 case was dismissed. The automatic stay of Section 362 was instantly lifted upon dismissal of the case. *See* 11 U.S.C. § 362(c)(2)(B); *see also Norton v. Hoxie State Bank,* 61 B.R. 258, 260 (D.Kan.1986); *In re Carter,* 74 B.R. 613, 617 (Bankr.E.D.Pa.1987); *In re Johnson,* 24 B.R. 832, 833 (Bankr.E.D.Pa.1982). At the time the case was dismissed, nothing prevented the lien of S.D.C.L. § 10–19–1 from attaching to the Bellman Farms, Inc., real property, and no affirmative acts were needed to perfect this lien against the FLB–O. The lien arises and is perfected by operation of law, but for the automatic stay, and, thus, Faulk County immediately, upon dismissal of the bankruptcy case, had a prior, perfected lien on the real property in question for unpaid real estate taxes from 1981, 1982, and 1983.

On March 13, 1984, debtor Bellman Farms, Inc., filed its second Chapter 11 bankruptcy petition. In this second case, the county taxing authority had a perfected lien for unpaid taxes from 1981 through 1983. But the filing of the second petition reinstated the automatic stay, preventing the creation and perfection of future tax liens. A lien could not arise for taxes due and owing for 1984, 1985, 1986, and 1987. Therefore, Faulk County is unsecured for the taxes due and owing during the pendency of this second bankruptcy proceeding. *Ballentine Bros., Inc.,* 86 B.R. 198; *In re New England Carpet Co., Inc.,* 26 B.R. 934, 939 (Bankr.D.Vt.1983).

---

1. 11 U.S.C. §§ 362(b)(3) and 546(b) provide an exception to this general rule that is irrelevant to the final determination in this case. *See*

Based on the above analysis, the amount of real estate taxes for 1981, 1982, and 1983, secured by the county's lien, will be deducted from the fair market value of the 960 acres, in order to determine the amount of the FLB–O's junior secured claim. Pursuant to 11 U.S.C. § 506(b), the county, as an oversecured lien creditor, is entitled to recover interest and costs on its secured claim. *See In re Brandenburg,* 71 B.R. 719 (Bankr.D.S.D.1987). Therefore, the interest and costs accruing on the 1981, 1982, and 1983 taxes until the effective date of the plan also are deducted from the fair market value of the real property. *See In re Krump,* No. 87–10230, slip op. at 8–10 (Bankr.D.S.D. June 7, 1988) (Hoyt, J.).

On the other hand, the amount of taxes due and owing for 1984, 1985, 1986, and 1987 is not deducted from the fair market value of the real property. The county does not have a secured claim for this amount because of the automatic stay, and, therefore, it is not a proper deduction in a Section 506(a) determination. This unsecured claim for Faulk County real estate taxes is governed by either 11 U.S.C. § 503(b)(1)(B)(i), as an administrative expense entitled to first priority of payment pursuant to 11 U.S.C. § 507(a)(1), or by 11 U.S.C. § 507(a)(7)(B), as a seventh priority claim. *See Carlisle Court,* 36 B.R. at 214–18. The issues of the proper classification and treatment of these post-petition taxes, and of the related interest and costs, however, are not properly before this Court. The present decision is limited to a determination of the allowed amount of the FLB–O's secured claim.

The debtors argued that the post-petition real estate taxes were a "reasonable, necessary cost and expense of preserving the estate" and they should recover the amount of the taxes from the value of the real property under 11 U.S.C. § 506(c). That section provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

11 U.S.C. § 506(c). Administrative expenses generally may not be charged against secured collateral. *In re Cascade Hydraulics & Util. Serv., Inc.,* 815 F.2d 546, 548 (9th Cir.1987). The payment of administrative expenses, however, will be allowed from the value of secured collateral when those expenses were incurred directly for the benefit of a secured creditor or when the secured creditor caused or consented to the expense. *See id.; Brookfield Production Credit Ass'n v. Borron,* 738 F.2d 951, 952 (8th Cir.1984); *In the Matter of Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982). The debtor-in-possession must show in quantifiable terms that it expended funds directly to protect and preserve the collateral. *Cascade,* 815 F.2d at 548; *Brookfield,* 738 F.2d at 952–53.

The debtors in this case have failed to specify how the FLB–O is directly benefited by the debtors' payment of post-petition unsecured real property taxes. "Preserving" the collateral implies that the debtor-in-possession was keeping the property safe from harm or destruction, or was maintaining it for some direct benefit to the FLB–O. Any "harm" to the real property could only have come from a lien of the county taxing authority, which would reduce the secured claim of the FLB–O. The county, however, was stayed from pursuing its remedies, including the creation and perfection of tax liens against the real property. Therefore, the FLB–O does not directly benefit by the payment of this unsecured claim, which is normally an administrative expense in the bankruptcy. *See* 11 U.S.C. § 503(b)(1)(B)(i).

The debtors also argued that the Farm Credit System would be required to take into account the amount of real estate taxes in determining the amount of debt to be restructured under the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568 (to be codified in scattered sections of 12 U.S.C.). Pursuant to the loan restructuring provisions of this act, the lender determines whether or not to restructure the loan, taking into consideration, among other factors, whether the cost to the lender of restructuring the loan

is equal to or less than the cost of foreclosure. *See id.* at Section 4.14A(d)(1)(A) (to be codified at 12 U.S.C. § 2202a). This provision does not mandate the restructuring of the debt at the liquidation value of the collateral. It is only a threshold analysis to determine whether restructuring is economically feasible. *Cf. In re Dilsaver,* 86 B.R. 1010 (Bankr.D.Neb.1988) (restructuring will be required if that is the least-cost alternative, that is, if it will produce more return to the lender than foreclosure). In fact, no provision of the Agricultural Credit Act sets forth a calculation for the amount of the restructured debt. Thus, debtors' argument is not accurate and is irrelevant to a determination of the creditor's allowed secured claim pursuant to 11 U.S.C. § 506(a).

Accordingly, the above and foregoing hereby constitute the Court's findings of fact and conclusions of law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the debtors is directed to submit an appropriate order in accordance with Bankr.R.P. 9021.