**UNITED STATES of America, Appellant,**

v.

**Laura M. PARMELE, Appellee.**

**No. 93–C–0652–B.**

United States District Court,
N.D. Oklahoma.

April 25, 1994.

Order on Motion for Rehearing
July 5, 1994.

F.L. Dunn, U.S. Atty., Tulsa, OK, James J. Long, U.S. Dept. of Justice, Tax Div., Washington, DC, for appellant.

Gary W. Wood, Tulsa, OK, for appellee.

## ORDER

BRETT, District Judge.

Now before the Court is the United States' appeal of a Bankruptcy Court decision. The Bankruptcy Court found that a secured claim by the Internal Revenue Service should be reduced by some $8,000. The United States challenges that decision, arguing that the Bankruptcy Court erred as a matter of law. For the reasons discussed below, the decision by the Bankruptcy Court is reversed.

1. The claim noted that the United States had filed *Notices of Federal Tax Lien* in Tulsa County on October 18, 1991 and November 27, 1991.

2. Parmele obtained a deficiency judgment against Feng Shiang Shu and Chin Jung Shu on August 8, 1989. On April 5, 1993, Parmele filed a *Motion To Approve Settlement Of Deficiency Judgment.* On May 5, 1993—without objection by the United States—the Bankruptcy Court ap-

## I. Summary of Facts/Procedural History

Prior to November of 1992, Appellee Laura M. Parmele owed the Internal Revenue Service ("IRS") $34,624.57 because she did not pay taxes for 1984, 1986, 1987 and 1988. On November 6, 1992, Parmele filed Chapter 13 Bankruptcy. About a month later, Appellant United States filed a *Proof of Claim* for the $34,624.57 owed by Parmele to the IRS ("IRS Claim").[1]

On December 16, 1992, Parmele filed an *Objection To The Claim of the Internal Revenue Service.* The objection asserted that the "value of any property to which the lien of the Internal Revenue Service attaches is substantially less than the amounts owed." The United States refuted Parmele's objection, stating that she had $15,357 in estate properties and additional assets as a part of a settlement agreement.[2]

On July 13, 1993, the Bankruptcy Court entered an *Order Determining Amount of Allowable Secured Claim.* The Bankruptcy Court reduced the IRS secured claim by $8,386 to $24,342. In making the reduction, the Bankruptcy Court exempted $3,226 of Parmele's property under 26 U.S.C. § 6334. Another $5,160 was exempted from the claim so that Parmele would be able to pay her 1993 estimated federal and state taxes.[3] Following the ruling, the United States filed the instant appeal.

## II. Legal Analysis

Appellant United States raises two issues. First, did the Bankruptcy Court err as a matter of law in reducing the United States' secured claim pursuant to 26 U.S.C. § 6334? Second, did the Bankruptcy Court err by reducing the claim by the amount owed by Parmele for 1993 taxes? Each issue is discussed below.

proved the $20,000 settlement. Of the $20,000, $300 was spent on attorney fees and $19,700 was transferred to Parmele's trustee.

3. The tax liability was a result of the proceeds from the $20,000 settlement plus approximately $13,000.00 earned by Parmele in her employment.

## A. Reduction of IRS Claim Pursuant To 26 U.S.C. § 6334

■ The Bankruptcy Court used § 6334 as a vehicle to reduce the IRS claim by $3,226.[4] Wrote the Court in its June 21, 1993 *Order:*

> The Internal Revenue Code, 28 U.S.C. § 6334, sets out certain property which is exempt from levy even though the lien of United States does attach to the property. In establishing the value of the claim of United States for payment under the Debtor's Chapter 13 Plan, the allowed secured claim of the United States shall be reduced by $3,226 which amount the parties have stipulated is the value of the exempt property which cannot be levied by United States, but the lien shall continue to attach to such property.

The United States contends that the Bankruptcy Court improperly used § 6334 to reduce the claim. It argues that § 6334 is a statute exempting property from a levy—not a statute allowing a bankruptcy court to reduce the value of an IRS tax lien.

A Ninth Circuit case is persuasive on this issue. In *United States v. Barbier*, 896 F.2d 377 (9th Cir.1990), the IRS assessed federal income taxes against the Barbiers. Similar to the instant case, the Barbiers argued that 26 U.S.C. § 6334, which exempts from an administrative levy household effects and a limited amount of other property, also prohibits the attachment of a federal tax lien on the exempted property. The Bankruptcy Court and District Court agreed, holding that a federal tax lien could not attach to property exempt from an administrative levy.

On appeal, however, the appellate court reversed. It first discussed 26 U.S.C. § 6321, which states: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon *all* property and rights to property, belonging to such person." It found that § 6334 addressed the issue of a levy—not a lien.[5] The Court then concluded:

> Holding that a lien does not extend to property exempt from levy under section 6334 would be inconsistent both with Supreme Court precedent and the statutory purpose of ensuring the government is able to secure collection of tax revenues. *Id. at 379.*

While the facts differ somewhat in the instant case, the issue—similar to the one in *Barbier*—is whether § 6334 can be used to reduce the amount of an IRS tax lien. The holding in *Barbier* persuades the court that § 6334 cannot be used for that purpose. The statute clearly applies to an IRS levy, not an IRS lien. Therefore, the court finds that the Bankruptcy Court erred on this issue. Consequently, the lien should *not* have been reduced by $3,226.

## B. Reduction of Claim by the Amount of Parmele's 1993 Taxes

■ In its July 13, 1993 *Order*, the Bankruptcy Court reduced the amount of the IRS claim by $5,160—the estimated amount of 1993 taxes owed by Parmele to the IRS and to the State of Oklahoma. Although the Bankruptcy Court did not discuss its reasoning in the opinion, an excerpt from the June 22, 1993 hearing shed some light on the court's decision:

---

4. Section 6334 states that certain property shall be exempt from levy, including personal effects, wearing apparel, etc.

5. The difference between a levy and a lien also suggests why a lien should still attach to property exempt from a levy. A levy forces debtors to relinquish their property. It operates as a seizure by the IRS to collect delinquent income taxes ... The IRS's levying power is limited because a levy is an immediate seizure not requiring judicial intervention. A levy connotes compulsion or a forcible means of extracting taxes from a recalcitrant taxpayer. A taxpayer

subject to an IRS levy is provided certain protection such as notice and an opportunity to pay the taxes due before the seizure. A lien, however, is merely a security interest and does not involve the immediate seizure of property. A lien enables the taxpayer to maintain possession of the property while allowing the government to preserve its claim should the status of the property later change. If, for instance, the debtor later sells his exempt personal property for cash, the IRS would be entitled to obtain such proceeds. *Barbier*, 896 F.2d at 379.

JUDGE: It seems to me as to this problem on the allowance of taxes that I think it's unfair for Ms. Parmele to be charged with an additional sum of $5,160. And, accordingly in the calculations, I will allow the withholding of said $5,160. Then I will direct that the Trustee pay said $5,160 to the taxing entities, the federal taxes and the Oklahoma taxes in their proportionate amount as an estimated tax for the 1993 taxes ...

UNITED STATES ATTORNEY: I would like to, just for the record, would the Court please direct counsel as to what provision under the Code he is relying upon to make that allocation?

JUDGE: Well, in all fairness—and I really don't know whether or not that property of the estate—as far as I'm concerned, that property of the estate in encumbered with legal obligations. That it seems to me, in addition, that it would be completely unfair and to defeat the purposes of 13 to burden and laden the debtor with an additional $5,000, which in this budget she'd never be able to pay. That that, in addition, is a proper deduction as to a determination of disposable income. And then if I have any other problem, I'll just throw in 105 (11 U.S.C. § 105). *Transcript of Proceedings, pp. 7–8 (Docket #59)*.

The United States argues that the Bankruptcy Court does not have the authority to use estate property to pay for "post-petition estimated taxes of the Debtor." *Appellant Brief, page 8 (docket # 7)*. The IRS contends that estate property must be used to pay the claim, citing 11 U.S.C. § 541.[6]

The issue here is, in essence, whether the Bankruptcy Court can use 11 U.S.C. § 105 to take proceeds from the estate property and pay the debtor's post-petition taxes. No case law has been found (or cited by Parmele)

that allows using Section 105 in that way. As a result, the Court finds that the Bankruptcy Court erred.

Section 105 allows bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Act. This directive is "consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549–50, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990). But such power is not limitless. For example, the Bankruptcy Court does not have the authority to contravene specific provisions of the Bankruptcy Code. *In re Pirsig Farms*, 46 B.R. 237 (D.Minn.1985). In addition, the Bankruptcy Court can not simply justify its decisions by invoking Section 105. *See, In re Lapiana*, 909 F.2d 221, 223 (7th Cir.1990) ("It is true of course that bankruptcy, despite its equity pedigree, is a procedure for enforcing prebankruptcy entitlement under specified terms and conditions rather than a flight of redistributive fancy or a grant of free-wheeling discretion such as the medieval chancellors enjoyed.") See, also, *United States v. Pepperman*, 976 F.2d 123, 131 (3rd Cir.1992) ("Section 105 does not give the court the power to create substantive rights that otherwise would be unavailable under the Code ... The fact that a bankruptcy proceeding is equitable does not give the judge a free-floating to redistribute rights in accordance with his or her personal views of justice and fairness, however, enlightened those views may be.")

In the instant case, this Court's decision is guided, in part, by 26 U.S.C. § 6321, which states: **"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States**

6. Parmele, obviously, disagrees with the United States. She writes: "In the case before the Court, we have an actual disposition of an asset (i.e., the deficiency judgment). The costs associated with the disposition are not hypothetical, but fixed. The trial court properly allowed for the costs and expenses associated with converting a worthless piece of paper to cash, which in

fact benefitted the Creditor United States. If the trial court had not provided for payment of taxes from the settlement it would have caused the Appellee to fail in her attempt to reorganize as all her disposable income was being submitted for funding of her plan in accordance with 11 U.S.C. 1322(a)(1)." Appellee's Brief, page 7 (docket # 11).

upon all property and rights to property, whether real or personal, belonging to such person." That language strongly suggests that Congress wanted to assure the collection of taxes. A second reason for the decision is the absence of any statutory or case authority supporting the Bankruptcy Court's decision. Finally, as a general rule, Section 105 does not allow a court to take estate proceeds and apply them to post-petition or "current" estimated taxes.[7] In addition, nothing in the record suggests exigent circumstances on the part of the debtor. Consequently, the decision of the Bankruptcy Court is **reversed** and **remanded** in accordance with this opinion.

SO ORDERED.

### ORDER

Now before the Court is Appellee's *Motion For Rehearing (docket # 17)*. Appellee raises virtually the same issues already examined in this Court's April 25, 1994 *Order*. After reconsideration and further examination of the issues, however, the Court denies Appellee's *Motion For Rehearing*.

The pertinent facts are as follows: Prior to November of 1992, Appellee Laura M. Parmele owed the Internal Revenue Service ("IRS") $34,624.57 for back taxes. On November 6, 1992, Parmele filed Chapter 13 Bankruptcy. About a month later, Appellant United States ("IRS") filed a *Proof of Claim* for the $34,624.57 owed by Parmele to the IRS. The IRS also had a lien on Parmele's property.

Parmele objected to the IRS claim on December 16, 1992. She argued that the value of her property (on which the IRS had a lien) was substantially less than the amount owed. The IRS refuted Parmele's argument, noting the value of her property was approximately $35,057 or more than the IRS's secured claim ($34,624.57).[1]

Subsequently, on June 21, 1993, the Bankruptcy Court, relying on 28 U.S.C. § 6334, reduced the IRS claim by $3,226—"the amount the parties have stipulated is the value of the exempt property which cannot be levied by [the] United States." *June 21, 1993 Order*.

Then, on July 13, 1993, the Bankruptcy Court ordered the Trustee to pay $5,160 from the estate property for Parmele's 1993 estimated federal and state income taxes. *Order Determining Amount of Allowable Secured Claim of the United States, July 13, 1993*.

Three days later, Parmele filed a *Modified Chapter 13 Plan*. On July 20, 1993, the IRS filed the instant appeal. A day later, on July 21, 1993, the Bankruptcy Court—acknowledging it knew about the IRS appeal—confirmed Parmele's *First Modified Chapter 13 Plan*.[2]

On April 25, 1994, this Court issued an *Order* reversing the Bankruptcy Court decision *(docket # 15)*. That decision prompted Parmele to file this *Motion For Rehearing* pursuant to Bankruptcy Rule 8015.[3]

### I. Legal Analysis

To support her *Motion For Rehearing*, Parmele raises four issues. First, she contends the Bankruptcy Court properly reduced the secured claim of the IRS. Second,

---

**7.** The court finds that the settlement proceeds were a part of the estate's property. See 11 U.S.C. § 541(a)(6).

**1.** Parmele obtained a deficiency judgment against Feng Shiang Shu and Chin Jung Shu on August 8, 1989. On April 5, 1993, Parmele filed a *Motion To Approve Settlement Of Deficiency Judgment*. On May 5, 1993—without objection by the United States—the Bankruptcy Court approved the $20,000 settlement. Of the $20,000, $300 was spent on attorney fees and $19,700 was transferred to Parmele's trustee. She also had properties worth $15,357.

**2.** The IRS did not appear for the confirmation hearing. However, at the confirmation hearing, the Bankruptcy Judge stated: "The Court is knowledgeable of, in the last 15 to 30 minutes, the appeal being filed in this matter, and with said knowledge, and upon the knowledge that service has been had upon the United States of America, ex rel IRS, the Court confirms the plan."

**3.** Rule 8015 states that a motion for rehearing may be filed within 10 days after entry of the district court's judgment. This Court entered its *Order* on April 26, 1994. Parmele filed her motion on May 6, 1994. The IRS did not respond to Parmele's motion.

Parmele argues that the Bankruptcy Court's decision to categorize her 1993 post-petition income taxes as a "reasonable and necessary" expense was correct. Third, Parmele asserts that the IRS appeal was *not* timely. Last, she claims the Bankruptcy Court's confirmation of her Chapter 13 Plan prevented the IRS from filing an appeal. Each issue is briefly discussed below.

### A. Reduction of Secured Claim Pursuant to 26 U.S.C. § 6334

The IRS had a secured claim for $34,-624.57. However, relying on 26 U.S.C. § 6334, the Bankruptcy Court reduced the claim by $3,226.[4] As noted in this Court's April 25, 1994 *Order*, nothing in the language of Section 6334 provides for such a reduction. The statute addresses the question of a levy and does not provide a mechanism for reducing a secured claim. See *United States v. Barbier*, 896 F.2d 377 (9th Cir.1990).[5]

### B. The Post–Petition Taxes

Parmele's estimated federal and state income taxes for 1993 was $5,160.[6] The Bankruptcy Court concluded that those estimated taxes should be paid from the estate property. No case authority was cited by the Bankruptcy Court, although it did mention 11 U.S.C. § 105.[7]

On appeal, Parmele also fails to cite any applicable case authority for the Bankruptcy Court's decision. Parmele, however, points to 11 U.S.C. § 506(c) (not mentioned by the Bankruptcy Court) as statutory authority. Section 506(c) states that the "trustee may recover from property securing an allowed secured claim the *reasonable, necessary costs and expenses* of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

A similar argument, however, was addressed *In re Bellman Farms Inc.*, 86 B.R. 1016, 1021 (Bankr.D.S.D.1988) where the debtor argued that post-petition real estate taxes were a "reasonable, necessary cost and expense of preserving the estate." *Id.* The court rejected that argument, noting that the debtor had failed to specify how the secured creditor directly benefitted by the debtors' payment of the taxes. *Id.*

The facts in the instant case are different, but the Court finds the reasoning in *Bellman* persuasive. Neither the debtor nor the Bankruptcy Court specified how the debtors' payment of the taxes directly benefitted the IRS concerning its secured claim. In effect, the payment simply reduced the IRS secured claim by an additional $5,160. That does not benefit the IRS. Consequently, the Court finds that Parmele's estimated post-petition income taxes cannot be classified as a Section 506(c) expense.

The Bankruptcy Court also noted that Section 105 gave it the authority to order the post-petition taxes be paid. However, Section 105 does not support the Bankruptcy Court's decision. That section allows bankruptcy courts to "issue any order, process or judgment that is necessary to carry out the provisions" of the Bankruptcy Act, but the power is not limitless. *See, generally, In re Lapiana*, 909 F.2d 221, 223 (7th Cir.1990) ("It is true of course that bankruptcy, despite

---

**4.** Section 6334 states that certain property shall be exempt from levy, including personal effects, wearing apparel, etc.

**5.** *Barbier* stands for the proposition that Section 6334 does not grant a taxpayer an exemption from a tax lien. But see *In re Voelker*, 164 B.R. 308 (Bankr.W.D.Wis.1993). In this case, similar reasoning should apply. Neither the language or any case law found supports using Section 6334 to "reduce" a secured claim.

**6.** This amount was "stipulated" to by the parties. According to Mr. Long, the estimated tax was based on *both* Parmele's $20,000 settlement proceeds and her $13,000 net income. See June 22, 1993 *Transcript*. The Court relied on Mr. Long's

representation in deciding that Parmele owed $5,160.

**7.** The Court stated: "Well, in all fairness—and I don't really know whether or not that property of the estate—as far as I'm concerned, that property of the estate is encumbered with the legal obligations. That it seems to me, in addition, that it would be completely unfair and to defeat the purposes of Chapter 13 to burden and laden the debtor with an additional $5,000, which in this budget, she'd never be able to pay. That that, in addition, is a proper deduction as to a determination of disposable income. And then if I have any other problem, I'll just throw in 105." See June 22, 1993 *Transcript*.

its equity pedigree, is a procedure for enforcing pre-bankruptcy entitlement under specified terms and conditions rather than a flight of redistributive fancy or a grant of free-wheeling discretion such as the medieval chancellors enjoyed.")[8]

In this case, using Section 105 in this manner is contra to 26 U.S.C. § 6321, which states: *"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."* That language clearly suggests that Congress wanted to assure the collection of taxes. The circumstances in this case do not justify using Section 105 to allow Parmele to, in effect, avoid payment of federal income taxes.

### C. The Timeliness of the IRS Appeal

■ Parmele contends the IRS did not file a timely appeal. This allegation focuses on the following facts: In a June 21, 1993 *Order*, the Bankruptcy Court reduced the secured claim of the IRS by $3,226. The IRS did not appeal. On July 13, 1993, the Bankruptcy Court entered a second *Order* concerning the post-petition taxes. The IRS appealed the *Order* to this Court on July 20, 1993.

Parmele argues that, since the IRS did not appeal (within 10 days) of the June 21, 1993 *Order*, its appeal is untimely. The Court disagrees. The two *Orders* focused on the same dispute between the IRS and Parmele. As discussed *In re Vause*, 886 F.2d 794, 797 (6th Cir.1989), "the mere fact that a dispute is 'separable' does not automatically make it a final appealable order." Finality of the order comes from the fact that it resolves all of the creditor's claims against the estate. *Id.* In this case, the July 13 *Order*, not the June 21 *Order*, resolved the issue of the IRS secured claim.[9] Therefore, the IRS appeal was timely filed.

### D. Parmele's Argument That Plan Confirmation Served As Res Judicata

■ The fourth issue involves a procedural question. On July 20, 1993, the IRS filed its appeal. A day later, the Bankruptcy Court confirmed Parmele's Chapter 13 Plan. At the confirmation hearing, the Bankruptcy Court stated that the confirmation either mooted the IRS appeal or served as *res judicata.*

Support for the Bankruptcy Court's decision is found in Section 1327(a) of the Bankruptcy Code. It provides that **"the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or rejected the plan."**

■ *In re Howard,* 972 F.2d 639 (5th Cir. 1992) discusses Section 1327(a) and concludes that when a debtor objects to a claim it puts the creditor on notice that "it must participate in the bankruptcy proceedings." *Id. at 642.* If the creditor has notice, but does not participate, the confirmation of the plan can preclude that creditor from raising the issues on appeal. *Id.*

In the case at bar, the IRS filed a claim. Parmele objected. Parmele filed the Chapter 13 Plan, but the IRS did not object or participate in the confirmation hearing. The Bankruptcy Court then confirmed the plan. Arguably, since the IRS did not object and/or participate in the plan confirmation, it would be precluded from raising the same issues to this Court.

However, this case has a factual twist that did not exist in *Howard, supra.* The IRS filed a *Notice of Appeal* on July 20, 1993— one day *before* the Bankruptcy Court confirmed Parmele's Chapter 13 Plan. This fact

---

**8.** Also, see, generally, *United States v. Pepperman,* 976 F.2d 123, 131 (3rd Cir. 1992) ("Section 105 does not give the court the power to create substantive rights that otherwise would be unavailable under the Code ... The fact that a bankruptcy proceeding is equitable does not give the judge a free-floating [power] to redistribute rights in accordance with his or her personal views of justice and fairness, however, enlightened those views may be.")

**9.** It also should be noted that the Bankruptcy Court reserved the right to "enlarge, expand, and supplement" its June 21 *Order*. That language suggests that the court did not consider its decision to be a final order.

raises a different question: Did the Chapter 13 plan confirmation, in effect, moot the IRS appeal? After review, the Court answers that question in the negative.

A similar circumstance took place in *In re Appletree Markets, Inc.,* 155 B.R. 431 (S.D.Tex.1993). The debtor argued that the creditor was precluded from questioning a bankruptcy court's order because it failed to argue at confirmation that the plan was not feasible. *Id. at 436.* Similar to the case at bar, the creditor had filed an appeal with the district court prior to the plan confirmation. The court rejected that argument, writing:

> **Under the facts it can hardly be contended that the bankruptcy court and the parties to the confirmation process were not aware that the UFCW [creditor] disagreed with the bankruptcy court's rejection of the CBA's. Furthermore, the [creditor] had no need to contest the propriety of that order during the plan confirmation process. The bankruptcy court had recently and thoroughly considered the issue, and there is no indication that raising the issue again during the plan confirmation process would cause the bankruptcy court to change its mind.** *In addition, and perhaps more importantly, the [creditor's] notice of appeal from the bankruptcy court's order ... divested the bankruptcy court of jurisdiction of that aspect of the case. Id. (emphasis added).*

In the instant case comparable reasoning should apply because the filing of a timely notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by such appeal.

## II. Conclusion

Before the Court is Parmele's *Motion For Rehearing* pursuant to Bankruptcy Rule 8015. Parmele re-urges various issues, questioning the decision in the Court's April 25, 1994 *Order.* However, for the foregoing reasons, the Court DENIES the *Motion For Rehearing (docket # 14).* The case is REVERSED and REMANDED to the Bankruptcy Court to proceed consistent with this Order.

SO ORDERED.