**In re Rex L. FELTEN, Mildred J. Felten, Debtors.**

**Bankruptcy No. L–88–00258–D.**

United States Bankruptcy Court, N.D. Iowa.

Sept. 21, 1988.

James O'Brien, Dubuque, Iowa, for debtors.

John Monroe, Cedar Rapids, Iowa, for PCA/movant.

Memorandum and Order Re: Valuation of Debtors' Property

MICHAEL J. MELLOY, Chief Judge.

Initial confirmation of Rex L. and Mildred J. Felten's (Debtors) Chapter 12 Plan of Reorganization came on for hearing. Pursuant to the confirmation procedures established in this District, the initial confirmation hearing was also conducted as a hearing on valuation. At issue in this hearing is the value of real estate which secures the debt owed to the Production Credit Association (PCA). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### FINDINGS OF FACT

This Court, having heard the evidence, the testimony of the expert appraisers, and having reviewed the appraisals, finds that the fair market value of the Debtor's real estate which secures the debt owed to the PCA is $98,000.00.

Both the appraisers called to testify appeared to be very competent. However, this Court was particularly impressed by Mr. Caraway's evident knowledge of the area in which this farm was located. This Court was somewhat bothered by the fact that the PCA's appraiser, Mr. Williams, used only comparables from Clinton County while Debtors' property lies in Jackson County. However, this Court also felt that Debtors' appraiser failed to fully take into account the discount for contract sales as well as the fact that he testified the subject property had buildings worth approximately $10,000 more than buildings on a very good comparable sale. Taking all those factors into consideration, this Court concludes that the fair market value of the property is $98,000.

### DISCUSSION AND CONCLUSIONS OF LAW

The Debtors argue that the valuation should be based upon the value mandated by the Agricultural Credit Act of 1987 ("Act"), § 102 (Pub.L. No. 100–233, amending the Farm Credit Act of 1971 at § 4.14A(e)(1), codified at 12 U.S.C. § 2202a(e)(1)). This would have the effect of valuing the property at a statutorily defined liquidation value. The fair market value would be reduced by the "cost[s] of foreclosure," as that term is defined in the Act. Included in the costs of foreclosure are the estimated costs of administrative and legal actions to foreclose the loan and dispose of the property, including attorneys fees and court costs, liquidation costs, including realtors fees, costs of holding the

property and all other costs incurred as a result of foreclosure or liquidation of the loan. Act § 102 (amending the Farm Credit Act of 1971 at § 4.14A(a)(2), codified at 12 U.S.C. § 2202a(a)(2)). The Court concludes, however, based upon its prior determinations regarding the valuation of real estate in Chapter 12 and upon the following cases, that the proper standard for valuation determination under 11 U.S.C. § 506(a) is the fair market value. *In re Snider Farms, Inc.,* 79 B.R. 801, 807–11 (Bankr.N. D.Ind.1987); *In re Reitz,* 79 B.R. 934, 937 (Bankr.D.Kan.1987); *In re Robinson Ranch, Inc.,* 75 B.R. 606, 608–09 (Bankr.D. Mont.1987); *In re Weldin–Lynn, Inc.,* 79 B.R. 409, 412 (Bankr.E.D.Ark.1987); *see also In re Courtright,* 57 B.R. 495 (Bankr. D.Or.1986).

In arriving at this conclusion, courts have found in interpreting 11 U.S.C. § 506(a) that fair market value is the appropriate standard. Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.* (Emphasis added).

The courts, when interpreting the highlighted sentence, have concluded that using liquidation value rather than fair market value is in contravention of the mandate of § 506(a). 11 U.S.C. § 1225(a)(5) provides for the protection of the value of the secured creditor's collateral. *In re Weldin– Lynn, Inc.,* 79 B.R. at 412. The *Robinson Ranch* court stated "[i]n Chapter 12 cases where the property will be held as a going-concern for the production of income to pay reinstated mortgages and subsequent debts, the value under 11 U.S.C. [§] 506(a) should be based on a fair market value, not a liquidating value." *In re Robinson Ranch, Inc.,* 75 B.R. at 608 citing *In re Yoder,* 32 B.R. 777 (Bankr.W.D.Pa.1983); *In re Fursman Ranch,* 38 B.R. 907, 909 (Bankr.W.D.Mo.1984). The *Robinson Ranch* court also quoted from the *In re Courtright,* decision:

The court believes that it should start with the fair market value of the property as that term is generally understood to be, i.e., the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time. The court should not use that value which would be obtained through a forced or quick sale.

*In re Robinson Ranch, Inc.,* 75 B.R. at 609 quoting *In re Courtright,* 57 B.R. at 496; *see also In re Weldin–Lynn, Inc.,* 79 B.R. at 412; *In re Snider Farms, Inc.,* 79 B.R. at 811; *In re Citrowske,* 72 B.R. 613 (Bankr.D.Minn.1987).

The Debtors in this case request the Court to use the valuation methodology set forth in the Act for purposes of determining the allowed claim of à creditor which is a member of the Farm Credit System. However, this Court concludes that the remedies available to a debtor under the Farm Credit Act are separate and distinct remedies from the remedial protection afforded to farm debtors under Chapter 12 of the Bankruptcy Code. Each of the remedies available to debtors, that is—the Farm Credit Act and Chapter 12—have separate and distinct procedures, as well as distinct rights and remedies to be imposed upon both debtors and creditors.

Other courts which have addressed this issue have reached a similar conclusion. In the case of *In re Bellman Farms, Inc.,* 86 B.R. 1016 (Bankr.D.S.D.1988), the Court concluded that liquidation costs should not be deducted when the debtor remains in possession of the property and is going to

continue to use the property as a going concern. The court also there concluded the Act "is irrelevant to a determination of the creditor's allowed secured claim pursuant to 11 U.S.C. § 506(a)." *In re Bellman Farms, Inc.*, 86 B.R. at 1022.

Likewise, the court in the case of *In re Neff*, 89 B.R. 672 (Bankr.S.D.Ohio 1988), found that the provisions of the Act were not applicable to Chapter 12 bankruptcy proceedings. In that case, it was the Federal Land Bank which argued that the Act should be applicable to the Chapter 12 proceedings, thus barring the debtor from surrendering his Federal Land Bank stock in partial satisfaction of the allowed secured claim. The court there focused upon one of the many conflicts between the powers of a debtor under Chapter 12, which includes the power to surrender Federal Land Bank stock in partial satisfaction of debt; and the conflicting provisions of the Act, which limit the right to surrender the stock. The court in construing the Act concluded that the Act was not applicable to a Chapter 12 bankruptcy proceeding so as to modify the rights and duties found in Chapter 12.

A review of the Act shows that there is a very detailed procedure to be followed in restructuring a distressed loan. *See* Act § 102 (amending the Farm Credit Act of 1971 at § 4.14; codified at 12 U.S.C. § 2202). The borrower has certain rights, including the right to have the property valued as argued by the debtor in this case. However, there are also certain obligations upon the borrower which are inconsistent with the Bankruptcy Code. For instance, Act § 102 (amending the Farm Credit Act of 1971 at § 4.14A(d)(1)(B), codified at 12 U.S.C. § 2202a(d)(1)(B)), requires the borrower to apply all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations. This provision appears to conflict with the provisions of § 1225(b)(1)(B) of the Bankruptcy Code which requires the debtor to devote projected disposable income to the payment of unsecured credi-

tors for at least three years. In terms of valuation of collateral, the Act provides that disputes as to valuation are to be resolved by an independent appraisal. Act § 106 (amending the Farm Credit Act of 1971 at § 4.14, codified at 12 U.S.C. § 2202(d)(1)). In this case, neither party has requested the appointment of an independent appraiser. Such an approach would be inconsistent with the adjudicative function of this court in making a value determination of the property which secures the debt owed to PCA.

The Act also includes various appeal rights. If the restructuring proposal is not approved at the local level, the borrower has various rights under the Act to appeal that decision, including the right of a personal appearance before a body known as the Credit Review Committee. Act § 106 (amending the Farm Credit Act of 1971 at § 4.14, codified at 12 U.S.C. § 2202(c)). The adoption of Debtors' position would have the effect of making the Bankruptcy Court the ultimate arbiter of disputes concerning debt restructuring. This does not appear to be what Congress intended.

If it had been the intent of Congress to have the provisions of the Act apply in a Chapter 11 or a Chapter 12 bankruptcy proceeding, Congress could have very easily expressed such an intent in the Act.[1] The courts will not normally incorporate other provisions of federal law into the Bankruptcy Code unless there has been a clearly expressed intent by Congress that such other provisions be applicable. In *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the court was dealing with the question of whether collective-bargaining agreements were subject to the debtors' right to accept or reject executory contracts under § 365 of the Bankruptcy Code. The Court there stated: "Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this instance indicates that Congress intended that § 365(a) apply to all

---

**1.** For example, one provision of the House bill that did not survive the Conference Committee explicitly referred to borrowers who file bank-

ruptcy. H.R.Conf.Rep. No. 490, 100 Cong. 1st Sess. 176, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2956, 2971.

**632**

collective-bargaining agreements covered by the NLRA." *Bildisco & Bildisco*, 104 S.Ct. at 1194.

Similarly, there has been a reluctance by the courts to incorporate "mechanical" interest rate provisions found in other sections of the United States Code into bankruptcy proceedings. In the case of *United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986), the court rejected the argument of the Internal Revenue Service that the appropriate rate of interest to be applied on the Internal Revenue Service debt was the rate established by 26 U.S.C. § 6621, the rate the government charges taxpayers on delinquent tax liabilities. The court cited a number of cases which stood for the proposition that the clear provisions of the bankruptcy code control, which provide that the market rate of interest was to be applicable on all claims, including the claim of the Internal Revenue Service. Absent a clearly expressed intent of Congress, any formulas or other statutory provisions found in other sections of the United States Code for determining value will not be incorporated by implication into the Bankruptcy Code.

In conclusion, it is the determination of this Court that the provisions of the Agricultural Credit Act of 1987 are not to be incorporated into Bankruptcy Code and are therefore inapplicable to the determination of the creditor's allowed secured claim.

### ORDER

IT IS THEREFORE ORDERED that the allowed secured claim of the Production Credit Association for purposes of plan confirmation is determined to be $98,000.