**In re Peter Gordon BALBUS, Debtor.**

**Bankruptcy No. 89–00067–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 23, 1989.

Robert G. Mayer, Fairfax, Va., for debtor.

Gerald M. O'Donnell, Alexandria, Va., Chapter 13 Trustee.

Thomas C. Power, Washington, D.C., for creditor.

## OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This matter came before the Court upon the objections of Brown & Company Securities Corporation (the "creditor") and the chapter 13 trustee to the confirmation of the debtor's chapter 13 plan. These objections raise several confirmation issues; however, the only remaining objection is based upon the contention that the debtor's total unsecured indebtedness exceeds the statutory limit of $100,000.00. *See* 11 U.S.C. § 109(e) (1982 & Supp. V 1987). In addition to objecting to confirmation, the creditor seeks to have the chapter 13 case dismissed or converted because the debtor is outside the debt limitation for chapter 13.

The Court conducted a hearing on the remaining objection to confirmation and motion to dismiss or convert the case on May 4, 1989. At that hearing the Court received evidence and heard argument.

Based upon the evidence and other preliminary rulings made by the Court at the hearing, the Court's ultimate decision on the objections to confirmation will be determined by the appropriate valuation of real estate of the debtor. The valuation of the property is necessary to determine an allocation of claims secured by the realty as between secured and unsecured claims pursuant to 11 U.S.C. § 506(a). Thus to the extent lien claims against the realty exceed the property value, these claims are unsecured and must be considered as part of the debtor's unsecured debt. *In re Ballard,* 4 B.R. 271 (Bankr.E.D.Va.1980).

The parties have agreed that the realty in question has a fair market value of $282,500.00. The only remaining question for the Court to decide is whether for purposes of § 506(a), the value of the property should be reduced by hypothetical costs of sale, here estimated to be a 6 percent realtor commission of $16,950.00. If the esti-

mated expense reduces the agreed value of the property then the unsecured portion of the claims will be increased by this same amount which is sufficient to take the total unsecured indebtedness of the debtor over the $100,000.00 limit and require the Court to deny confirmation.[1]

Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (1982 & Supp. V 1987).

In support of confirmation of his plan, the debtor argues that sale costs should not be considered here because § 506(a) states that property is to be valued in light of the purpose of the valuation and the proposed disposition of the property; since the debtor proposes to retain his real estate under the chapter 13 plan, he urges there is no need to consider hypothetical disposition costs in making the valuation.

Bankruptcy courts considering the valuation of property for secured claim determination under § 506(a) have reached conflicting results on the question of whether hypothetical expenses of sale are to be considered even though the debtor plans to retain the property. The basis for the conflict lies in the potentially inconsistent language of the two sentences of § 506(a). The first sentence provides that the amount of the secured claim is based upon the value of the "creditor's interest in the estate's interest in such property". As pointed out by debtor's counsel, the second sentence of the statute provides that property will be valued according to "the purpose of the valuation and ... the proposed disposition or use of" the property.

In the following cases under either chapters 12 or 13 where property was to be retained by the debtors, it was held that selling expenses are not considered in the valuation of collateral due to language in § 506(a) that value is determined in light of the proposed disposition or use: *In re Felten*, 95 B.R. 629, 19 B.C.D. 128 (Bankr.N.D. Iowa 1988); *In re Bellman Farms, Inc.*, 86 B.R. 1016 (Bankr.D.S.D.1988); *In re Gerhardt*, 88 B.R. 151 (Bankr.S.D. Ohio 1987); *In re Courtright*, 57 B.R. 495 (Bankr.D.Or. 1986).

However, the majority of reported decisions hold that costs of sale should be calculated in the valuation notwithstanding the debtor's retention of the property. *See In re Smith*, 92 B.R. 287 (Bankr.S.D. Ohio 1988); *In re Boring*, 91 B.R. 791 (Bankr. S.D. Ohio 1988); *In re Claeys*, 81 B.R. 985 (Bankr.D.N.D.1987); *Parr v. First Alabama Bank of Hartselle (In re Parr)*, 30 B.R. 276 (Bankr.N.D.Ala.1983); *In re Davis*, 14 B.R. 226 (Bankr.D.Me.1981).

*In re Claeys* presents a scholarly discussion of the issue and justification for the view that costs should be considered. Bankruptcy Judge William A. Hill's opinion in *Claeys* states

that since it is the creditor's interest in the property that is being valued and not the collateral itself, it should not make any difference whether the debtor is retaining the property.

81 B.R. at 990. Judge Hill goes on to conclude that in making valuations, courts usually attempt to find what amount would be recovered if the creditor's collateral were disposed of in a "commercially reasonable manner"; this necessarily requires

---

**1.** Debtor's initial argument is that estimated costs of sale should be disregarded here because the objecting parties failed to produce evidence that *a 6 percent commission would be payable* in the event of sale. However, in view of the Court's decision on the larger valuation issue this question will not be considered.

the consideration of reasonable expenses of sale. 81 B.R. at 991. A significant influence in Judge Hill's conclusion to consider costs of sale in valuation seems to be the holdings of the Ninth Circuit Court of Appeals in *Crocker National Bank v. American Mariner Industries (In re American Mariner Industries)*, 734 F.2d 426 (9th Cir. 1984) and the Eighth Circuit in *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388 (8th Cir.1986), *rev'd*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

Judge Hill's analysis in *Claeys*, though supported philosophically by the two courts of appeals decisions cited, was considerably undercut, however, by the Supreme Court's reversal of *Ahlers* and more particularly by that court's decision in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In *Timbers* the Supreme Court rejected the concept of "lost opportunity costs" for undersecured creditors which had been approved in a series of lower court decisions, including *In re American Mariner Industries*, 734 F.2d 426, cited in *Claeys*. The holding in *Timbers* was that an undersecured creditor is not entitled to postpetition interest on the value of its collateral as compensation for the delay in foreclosure imposed by the automatic stay of 11 U.S.C. § 362(d)(1).

The conflicting results in the lower courts on the issue which resulted in the Supreme Court's *Timbers* decision revolved around the interpretation of what is encompassed in a secured creditor's "interest in property"; the decision specifically noted and discussed the similarity of this troublesome term, as found in the first sentence of § 506(a) and in §§ 361 and 362(d). Therefore, although the issue in *Timbers* does not bear directly on the valuation question which this Court must address, the Supreme Court's discussion and interpretation of this language is instructive and helpful. For example:

In subsection (a) of this provision [§ 506] the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues—since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests this was intended. *The phrase "value of such creditor's interest" in § 506(a) means the "value of the collateral."* H.R.Rep. No. 95–595, pp. 181, 356 (1977); see also S.Rep. No. 95–989, p. 68 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5864, 6141, 6312. (emphasis supplied)

484 U.S. at 372, 108 S.Ct. at 630, 98 L.Ed.2d at 749.

The Supreme Court's statement that the value of a secured creditor's interest means the value of the collateral appears to avoid the somewhat tortured interpretation of § 506(a) which requires the assumption of a sale in order to fix the secured creditor's interest and consequently seems to ignore the actual use or disposition intended for the property.

The Court recognizes that, *Timbers* notwithstanding, a plausible argument still exists for considering hypothetical sales expenses for all valuation purposes under § 506(a). Perhaps the inherent difficulty with the issue comes from the fact that bankruptcy valuations of property, usually in the face of a threatened foreclosure, have typically taken disposition costs into consideration. However, the Court concludes that the better view is that the secured creditor's interest may be valued for § 506(a) purposes without superimposing a foreclosure or other sale of the collateral where a disposition of the property is not reasonably in the offing.[2]

---

2. The Court expresses no opinion in this decision on the appropriate use of fair market ver-

sus forced sale values.

Based upon the Court's conclusion that it is unnecessary to assume a disposition of the debtor's real property, it is held that potential costs of sale of the property are to be disregarded. Since the effect of the Court's ruling is that the debtor's unsecured indebtedness is less than $100,000.00, the objections to confirmation are denied.

The motion of Brown & Company Securities Corporation to dismiss or convert the case is denied.

The standing Chapter 13 trustee will submit an appropriate order of confirmation of the debtor's chapter 13 plan.

The Clerk is directed to send copies of this opinion to debtor's counsel, counsel for Brown & Company Securities Corporation and the chapter 13 trustee.