In re Marion Zenola CASE, Debtor.

**UNITED STATES, Farmers Home Administration, Appellant,**

v.

**Marion Zenola CASE, Appellee.**

**BAP No. EW 89–1313–AsMeR.**

**Bankruptcy No. 87–03131–K32.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 22, 1989.

Decided July 10, 1990.

William H. Beatty, Spokane, Wash., for appellant U.S.

Robert J. Reynolds, Yakima, Wash., for appellee Marion Zenola Case.

Before ASHLAND, MEYERS and RUSSELL, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The United States of America, acting through the Farmers Home Administration ("FmHA"), appeals the bankruptcy court's confirmation of a Chapter 12 plan which reduced FmHA's allowed secured claim by the costs of foreclosure from the fair market value of the real property and which provided for an interest rate less than the fair market rate on FmHA's allowed secured claim. We reverse and remand.

## FACTS

The debtor Marion Zenola Case filed her Chapter 12 petition on September 25, 1987. At the time of the filing of the petition, the debtor owed FmHA at least $620,000. FmHA was secured by both a mortgage on real property and liens on livestock and equipment owned by the debtor.

On October 8, 1987 the debtor proposed a Chapter 12 plan. The plan divided the amount owed to FmHA into a secured claim of $232,166.25 and an unsecured claim of $387,833.75. The plan proposed to pay the secured claim over 40 years at an interest rate of 5.5% per year.

FmHA filed an objection to the debtor's plan on October 27, 1987. FmHA claimed that as of the petition date, the debtor owed FmHA $648,043.99 and was delinquent in the amount of $254,292.62. Although the debtor valued the real property at approximately $239,474, FmHA believed the debtor was undervaluing the property and that it was worth between $400,000 and $500,000. FmHA objected to the debtor's proposed 5.5% interest rate and believed it should receive no less than the regular farm ownership interest rate of 9.5%. FmHA also objected to the 40-year payment plan and believed the term should be shortened to 25 years. In addition, FmHA claimed that the plan was not feasible.

A confirmation hearing on the plan was held on October 13, 1988. The debtor argued that the land should be valued between $200,000 and $250,000 and then reduced to net recovery value by deducting the costs of liquidation as provided in the Agricultural Credit Act of 1987 ("Act"), codified at 12 U.S.C. § 2202a(a)–($l$). Similarly, the debtor argued that she was entitled to the interest rate provided for in the Act. FmHA argued that the market value of the land was between $315,000 and $340,000 and objected to a deduction of the liquidation costs. In addition, FmHA renewed its objection to the proposed rate of

interest. The court determined that the· fair market value of the property was $285,000. The court felt that the debtor was entitled to the formulas suggested in the Act regarding both the net recovery value and the interest rate, and in essence overruled FmHA's objections on those points. Undisputed liquidation costs of $87,500 were deducted from the $285,000 figure, establishing a liquidation value of $197,000. FmHA's allowed secured claim insofar as it was based on the debtor's real property was thus established at that figure.

The debtor submitted an amended Chapter 12 plan on February 8, 1989 which incorporated the values established by the court at the October 13, 1988 hearing. The amended plan proposed payment on FmHA's allowed secured claim aver 40 years at an interest rate of 6.25% per year. A confirmation hearing on the amended plan was held on March 22, 1989. FmHA renewed its objection to the debtor's intended use of the liquidation value rather that the fair market value, and also to the use of the contract rate of interest as opposed to the market rate of interest. The court confirmed the plan over FmHA's objections. The order confirming the plan was entered on March 28, 1989. FmHA filed a timely notice of appeal.

## ISSUES

Whether the court erred in its determination that the amount of FmHA's allowed secured claim was the fair market value of the real property reduced by the costs of foreclosure, as provided for in the Agriculture Credit Act of 1987.

Whether the court erred in confirming a plan that allowed repayment at an interest consistent with the Act but well below the market rate.

## STANDARD OF REVIEW

▮ The question of whether or not the court was bound to follow the Act in its value and interest determinations is one of law which this court reviews *de novo*. *In re Rubin*, 875 F.2d 755, 758 (9th Cir.1989). The court's value and interest determina-

tions require the court to interpret 11 U.S.C. §§ 1225(a)(5)(B)(ii) and 506. A court's interpretation of a statute is also reviewed *de novo*. *In re Nunn*, 788 F.2d 617, 618 (9th Cir.1986); *In re Tompkins*, 95 B.R. 722, 723 (9th Cir. BAP 1989).

## DISCUSSION

*The court was not bound to follow the Act in its value and interest determinations.*

The bankruptcy court felt that the debtor was entitled to the formulas suggested in the Act regarding valuation and interest. We conclude that the court misinterpreted the interplay between the Bankruptcy Code provisions which govern valuation of secured claims and interest and the provisions of the Act which govern the restructuring of farm debt.

The Act requires certain lenders to provide their borrowers with an opportunity to apply for loan restructuring prior to the institution of foreclosure proceedings against their collateral. *See* 12 U.S.C. § 2202a(b)(1)-(3). The borrower is to respond to this opportunity by submitting a written request for the restructuring of its distressed loan in accordance with a preliminary restructuring plan which is to be proposed by the borrower in its application for restructuring. *See* 12 U.S.C. § 2202a(a)(1)(A). When reviewing such an application, the lender is ·to consider among other things, whether the cost to the lender of restructuring the loan is equal to or less than the cost of foreclosure. *See* 12 U.S.C. § 2202a(d)(1)(A)-(E). If the lender determines that the potential cost of restructuring is less than or equal to the potential cost of foreclosure, the lender is compelled to restructure the loan in accordance with the plan of the borrower. *See* 12 U.S.C. § 2202a(e)(1). Costs of foreclosure are defined at 12 U.S.C. § 2202a(a)(2)(A)-(E) and include estimated costs of administrative and legal actions to foreclose the loan and dispose of the property, including attorneys' fees and court costs, liquidation costs, including realtor's fees, costs of holding the property and all other costs in-

curred as a result of the foreclosure or liquidation of the loan. *In re Felten*, 95 B.R. 629, 629–30 (Bankr.N.D.Iowa 1988).

■ As defined by the Act, "cost of foreclosure" is intended to be nothing more than a threshold upon which to determine whether a particular restructuring proposal is economically feasible. *In re Bellman Farms*, 86 B.R. 1016, 1022 (Bankr.D.S.D. 1988). The Act does not mandate the restructuring of the debt at the liquidation value of the collateral, and in fact does not set forth a calculation for the amount of the restructured debt. *Id.*

■ Even if the Act did mandate the restructuring of the debt at the liquidation value of the collateral, i.e. the fair market value of the property reduced by the cost of foreclosure, the bankruptcy court would not be bound by the Act. The remedies available to a debtor under the Act are separate and distinct remedies from the remedial protection afforded to farm debtors under Chapter 12. *Felten*, 95 B.R. at 630. The Act and Chapter 12 have separate and distinct procedures, as well as distinct rights and remedies to be imposed upon both debtors and creditors. *Id.* In determining the value of FmHA's allowed secured claim and the proper rate of interest to be applied, we conclude that the provisions of the Act are inapplicable. *See In re Cansler*, 99 B.R. 758 (W.D.Ky.1989); *In re Neff*, 89 B.R. 672 (Bankr.S.D.Ohio 1988).

*The court improperly determined that the value of FmHA's allowed secured claim was the fair market value of the property reduced by the costs of foreclosure.*

■ Section 1225 of the Bankruptcy Code sets forth the requirements for confirmation of a Chapter 12 plan. FmHA argues that the debtor's plan failed to comply with § 1225(a)(5)(B)(ii) which provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim;

In order to determine whether "value" has been provided under § 1225(a)(5)(B)(ii), the court must focus on the amount of the allowed secured claim. *See In re Malody*, 102 B.R. 745, 747 (9th Cir. BAP 1989). The amount of the allowed secured claim is determined in accordance with § 506(a) which provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The majority of Chapter 12 cases that have determined the allowed amount of a creditor's secured claim when a debtor retains the collateral have held that the proper standard for valuation determination is the fair market value, without deducting the costs of sale. *See In re Felten*, 95 B.R. 629, 630 (Bankr.N.D.Iowa 1988); *In re Anderson*, 88 B.R. 877, 885–86 (Bankr.N.D. Ind.1988); *In re Bellman Farms, Inc.*, 86 B.R. 1016, 1019 (Bankr.D.S.D.1988); *In re Foster*, 79 B.R. 906, 907 (Bankr.D.Mont. 1987); *In re Snider Farms, Inc.*, 79 B.R. 801, 811 (Bankr.N.D.Ind.1987); *In re Danelson*, 77 B.R. 261, 263 (Bankr.D.Mont. 1987); *In re Robinson Ranch Inc.*, 75 B.R. 606, 608 (Bankr.D.Mont.1987). *In re Claeys*, 81 B.R. 985, 990–92 (Bankr.D.N.D. 1987) on the other hand, held that when the debtor proposes to retain the collateral, the costs of sale should be deducted from the fair market value of the property in order to arrive at the allowed amount of the creditor's secured claim.

The *Claeys* court relied on the first sentence of § 506(a), which provides that an allowed secured claim is secured to the extent of the value of such creditor's interest in such property, in concluding that costs of sale should be deducted. The court noted that the first sentence of § 506(a) suggests that since it is the creditor's interest that is being valued and not the collateral itself, it should not make any difference whether the debtor is retaining the property, and costs of sale should still be deducted. *Claeys,* 81 B.R. at 990. The *Claeys* court declined to follow the cases whose interpretation of § 506(a) focused more on the second sentence of § 506(a), which provides that the value of the creditor's interest in the property shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the property.

The legislative history suggests that the *Claeys* court misinterpreted § 506(a). The House Report states that:

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6312. Similarly, the Senate Report states that:

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting a creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of the plan.

Sen.R. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* U.S.Code Cong. & Admin.News 5787, 5854.

The legislative history points out that value determinations under § 506(a) may differ depending upon what section of the Code they relate to. Similarly, in *In re Snider Farms, Inc.,* 79 B.R. 801, 807–08 (Bankr.N.D.Ind.1987) the court noted:

> Accordingly, valuation for the different purposes of determining adequate protection under § 361, or to determine if the Debtor has met the "best interest of creditors" test under Chapters 11, 12, or 13, may require the Court to employ different valuation criteria than for "cramdown" purposes under § 1225(a)(5), § 1325(a)(5) or § 1129(b). That is, the focus of inquiry as to any value determination must be made on the interests that a particular Code section is designed to protect and valuation must be made with regard to those purposes. 3 Collier on Bankruptcy, § 506.04 (15th Ed.1986).

> Thus, the treatment of secured creditors and the valuation of property subject to liens in a "cramdown" hearing to confirm a plan over the objections of a secured creditor under Chapter 11, 12, and 13 must be distinguished from valuation for adequate protection purposes which covers the period between the date of the petition and the confirmation of the plan.

If we were attempting to value FmHA's interest in the property for adequate protection purposes, the possibility of forced liquidation would be assumed and a deduction for selling costs would be logical. However, we conclude that for the purposes of § 1225(a)(5)(B)(ii) valuation, when the debtor plans to retain the property, selling costs should not be deducted from the fair market value of the property when valuing the creditor's interest in the property.

*The court erred in confirming a plan at an interest rate well below the market rate.*

■ The court confirmed the debtor's amended plan which provided for payments at an annual interest rate of 6.25%, pre-

sumably the rate called for by the Act. We have already determined that the bankruptcy court was not bound to follow the rate provided for in the Act. We must now determine whether or not the 6.25% interest rate provided FmHA with the present value of its secured claim it was entitled to under § 1225(a)(5)(B)(ii).

FmHA argued that the appropriate interest rate under § 1225(a)(5)(B)(ii) is the fair market rate at the time of confirmation. We agree. In *In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503, 1508 (9th Cir.1987), the Ninth Circuit held that in determining the appropriate interest rate under § 1129(a)(9)(C), the bankruptcy court must make a case-by-case determination of what interest rate the reorganizing debtor would have to pay a creditor in order to obtain a loan on equivalent terms in the open market. Both § 1129(a)(9)(C) and § 1225(a)(5)(B)(ii) require a determination of the present value of a creditor's claim as of the effective date of the plan. Therefore, an interpretation of one section applies equally to the interpretation of the other section. *In re Patterson*, 86 B.R. 226, 227–28 (9th Cir. BAP 1988) (citing *Camino Real*, 818 F.2d at 1505).

In *Patterson* we followed *Camino Real* and concluded that in determining the proper interest rate under § 1225(a)(5)(B)(ii), a case-by-case determination of the interest rate is also mandatory because it is calculated according to the rate the reorganizing debtor would have to pay a creditor in order to obtain a loan of equivalent value in the open market. Several recent circuit court opinions have also concluded that the current market rate of interest is the proper rate under § 1225(a)(5)(B)(ii). *See In re Hardzog*, 901 F.2d 858, 860 (10th Cir.1990); *United States v. Arnold*, 878 F.2d 925, 930 (6th Cir.1989); *United States v. Doud*, 869 F.2d 1144, 1145–46 (8th Cir.1989). The court erred in confirming a Chapter 12 plan at an interest rate well below the market rate.

## CONCLUSION

The court's order confirming the debtor's Chapter 12 plan is reversed. If the debtor files an amended Chapter 12 plan, the bankruptcy court can then determine whether the proposed interest rate is an appropriate market rate of interest and whether the plan as proposed is feasible.