April 3, 1995
United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit

No. 94-2025

IN RE WINTHROP OLD FARM NURSERIES, INC.,

Debtor.

WINTHROP OLD FARM NURSERIES, INC.,

Appellant,

v.

NEW BEDFORD INSTITUTION FOR SAVINGS, ET AL.,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Boudin and Stahl,
Circuit Judges.

ERRATA SHEET ERRATA SHEET

Please make the following change to the opinion issued on March
22, 1995.

Page 3, first full paragraph, line 3 - change "far" to
"fair"

United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit

No. 94-2025

IN RE WINTHROP OLD FARM NURSERIES, INC.,

Debtor.

WINTHROP OLD FARM NURSERIES, INC.,

Appellant,

v.

NEW BEDFORD INSTITUTION FOR SAVINGS, ET AL.,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Boudin and Stahl,
Circuit Judges.

Stephen E. Shamban with whom Ann Brennan and Stephen E. Shamban
Law Offices, P.C. were on brief for appellant.
Richard M. Peirce with whom Roberts, Carroll, Feldstein & Peirce,
Inc. was on brief for appellees.

March 22, 1995


STAHL, Circuit Judge. Chapter 11 debtor Winthrop STAHL, Circuit Judge.

Old Farm Nurseries, Inc. ("Winthrop"), appeals the district

court order affirming the bankruptcy court's decision that,

to determine the status of the claim of undersecured junior

mortgagee New Bedford Institution for Savings ("NBIS")

pursuant to 11 U.S.C. 506(a), Winthrop's real property (the

"Property") should be valued at its fair market value. We

affirm.

I. I.

BACKGROUND BACKGROUND

Winthrop operates a retail garden shop and

commercial landscaping business on the Property, located at

462 Winthrop Street in Rehoboth, Massachusetts. On February

2, 1993, Winthrop filed a petition for relief under Chapter

11 of the Bankruptcy Code (the "Code"). On July 16, 1993,

Winthrop filed its Disclosure Statement and Plan of

Reorganization (the "Plan"). The Plan provides that Winthrop

will retain all of its assets except for the Property, which

is to be transferred to a new entity apparently controlled by

Winthrop's principal, which will in turn lease it back to

Winthrop. Thus, under the Plan, Winthrop effectively retains

control of the Property and its use.

The Property is encumbered by a first mortgage in

the amount of $287,000 held by Northeast Savings, F.A., and

by tax liens of approximately $20,000. NBIS, the holder of a

-2- 2

junior mortgage on the Property, is owed approximately

$576,000. The parties stipulated to a liquidation value for

the Property of $300,000 and a fair market value of $400,000.

Winthrop's Plan would transfer the Property to the new entity

free and clear of all liens except for the Northeast Savings

mortgage. The Plan would "strip down" the NBIS mortgage to

the liquidation value of the Property, leaving NBIS's claim

entirely unsecured. The Plan proposes a payout of twenty

cents on the dollar over a four-year period to unsecured

creditors, whose claims, including NBIS's, total

approximately $756,761.

NBIS objected to the Plan, claiming that the

Property should be valued at fair market value, not

liquidation value. If the Property is valued at fair market

value, NBIS would have a secured claim in the amount of

approximately $100,000, with the remainder of its claim

unsecured.

The bankruptcy court, citing a line of cases

holding that fair market or going concern value is the

appropriate standard in valuing collateral that a Chapter 11

debtor proposes to retain and use, granted NBIS's motion and

valued the Property at $400,000. The district court

affirmed, and Winthrop now appeals.

II. II.

STANDARD OF REVIEW STANDARD OF REVIEW

-3- 3

"In an appeal from district court review of a

bankruptcy court order, we independently review the

bankruptcy court's decision, applying the `clearly erroneous'

standard to findings of fact and de novo review to

conclusions of law." Grella v. Salem Five Cent Sav. Bank, 42

F.3d 26, 30 (1st Cir. 1994). Thus, our review is de novo.

The bankruptcy court's interpretation of 506(a) presents a

question of law. Its application of the statute to the

particular facts of this case poses a mixed question of law

and fact, subject to the clearly erroneous standard, unless

the bankruptcy court's analysis was "infected by legal

error." Williams v. Poulos, 11 F.3d 271, 278 (1st Cir.

1993).

III. III.

DISCUSSION DISCUSSION

Section 506(a) governs the determination of whether

any portion of a creditor's claim should be classified as a

secured claim:

(a) An allowed claim of a creditor
secured by a lien on property in which
the estate has an interest, or that is
subject to setoff under section 553 of
this title, is a secured claim to the
extent of the value of such creditor's
interest in the estate's interest in such
property, or to the extent of the amount
subject to setoff, as the case may be,
and is an unsecured claim to the extent
that the value of such creditor's
interest or the amount so subject to
setoff is less than the amount of such
allowed claim. Such value shall be

-4- 4

determined in light of the purpose of the
valuation and of the proposed disposition
or use of such property, and in
conjunction with any hearing on such
disposition or use or on a plan affecting
such creditor's interest.

11 U.S.C. 506(a) (emphasis added). The statute does not

direct courts to choose any particular valuation standard in

a given type of case. As evidenced by the emphasized

language in the statute's second sentence, Congress

apparently did not intend that courts would use either a

liquidation or fair market value standard exclusively,

envisioning instead a flexible approach by which courts would

choose a standard to fit the circumstances. Relevant

legislative history buttresses this notion. The House Report

states:

Subsection (a) of [ 506] separates an
undersecured creditor's claim into two
parts-he has a secured claim to the
extent of the value of his collateral; he
has an undersecured claim for the balance
of his claim. "Value" does not
necessarily contemplate forced sale or
liquidation value of the collateral; nor
does it imply a full going concern value.
Courts will have to determine value on a
case-by-case basis, taking into account
the facts of each case and the competing
interests in the case.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 356 (1977),

reprinted in 1978 U.S.C.C.A.N. 5787, 6312 (emphasis added).

The Senate Report's commentary on 506 offers little

insight, but its commentary on 361 -- the Code section that

provides for adequate protection payments to secured

-5- 5

creditors in some circumstances -- is further evidence that

Congress intended that courts would sometimes value

collateral at something greater than its liquidation price:

Neither is it expected that the
courts will construe the term value to
mean, in every case, forced sale
liquidation value or full going concern
value. There is wide latitude between
those two extremes although forced sale
liquidation value will be a minimum.
In any particular case, especially a
reorganization case, the determination of
which entity should be entitled to the
difference between the going concern
value and the liquidation value must be
based on equitable considerations arising
from the facts of the case.

S. Rep. No. 989, 95th Cong., 2d Sess. 54 (1978), reprinted in

1978 U.S.C.C.A.N. 5787, 5840 (emphasis added). Although this

commentary is not specifically addressed to 506(a), it is

nevertheless relevant, since a valuation for 361 purposes

necessarily looks to 506(a) for a determination of the

amount of a secured claim.1 Indeed, since adequate

protection payments immediately deplete the estate's assets -

- even before it is certain that a reorganization plan will

be confirmed -- one would expect that the valuation standard

used to determine whether such payments are justified should

be extremely conservative. See In re Case, 115 B.R. 666, 670



1. See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest
Assoc., 484 U.S. 365, 371-72 (1988) (stating that statutory
construction is a "holistic endeavor" and defining value of
"entity's interest in property" entitled to adequate
protection under 361 and 362 in light of meaning of value
of "creditor's interest" in property under 506(a)).

-6- 6

(Bankr. 9th Cir. 1990) (stating in dictum that in a valuation

for adequate protection purposes, "forced liquidation would

be assumed and a deduction for selling costs would be

logical"). Nevertheless, the Senate language suggests that

even in a 361 context, a court might value collateral at

something more than its liquidation value.

We have not previously considered this issue. A

number of courts, however, including four Circuit Courts,

have adhered to this clear expression of congressional intent

and declined to value collateral that a debtor proposes to

retain based on a hypothetical foreclosure sale. These

courts reason that because the reorganizing debtor proposes

to retain and use the collateral, it should not be valued as

if it were being liquidated; rather, courts should value the

collateral "in light of" the debtor's proposal to retain it

and ascribe to it its going-concern or fair market value with

no deduction for hypothetical costs of sale.2



2. See, e.g., In re McClurkin, 31 F.3d 401, 405 (6th Cir.
1994) (holding that 506(a) "does not require or permit a
reduction in the creditor's secured claim to account for
purely hypothetical costs of sale" of Chapter 13 debtor's
residence); Matter of Rash, 31 F.3d 325, 329-31 (5th Cir.
1994) (holding that truck to be retained by Chapter 13 debtor
must be valued at replacement cost to debtor because
foreclosure value fails to account for debtor's proposed use
of collateral); Lomas Mortgage USA v. Wiese, 980 F.2d 1279,
1284-86 (9th Cir. 1992) (holding that second sentence of
506(a) precludes deduction of hypothetical costs of sale in
valuing Chapter 13 debtor's real property to be retained by
debtor), cert. granted and judgment vacated on other grounds,
113 S. Ct. 2925 (1993) (remanding for reconsideration in
light of Nobleman v. American Sav. Bank, 113 S. Ct. 2106

-7- 7

Other courts, however, have chosen to read 506(a)

as requiring in virtually all cases a valuation of collateral

limited to the net amount a secured creditor could recover if

it seized or foreclosed on the collateral and disposed of it

in accordance with applicable state law.3 These courts tie



(1993)); In re Balbus, 933 F.2d 246, 252 (4th Cir. 1991)
(same); In re Case, 115 B.R. 666, 670 (Bankr. 9th Cir. 1990)
(holding that for Chapter 12 plan confirmation purposes,
hypothetical costs should not be deducted from fair market
value in valuing collateral to be retained by debtor); In re
Arnette, 156 B.R. 366, 368 (Bankr. D. Conn. 1993) (holding
that motor vehicle to be retained by chapter 13 debtor
"should be valued at the price the debtor could get for it in
a free and open market, i.e. its fair market value"); In re
Green, 151 B.R. 501 (Bankr. D. Minn. 1993) (valuing car to
be retained by Chapter 13 debtor at retail, rather than
wholesale value); Matter of Savannah Gardens-Oaktree, 146
B.R. 306, 310 (Bankr. S.D. Ga. 1992) (using fair market value
to value apartment complex in Chapter 11 adequate protection
context); In re Usry, 106 B.R. 759, 762 (Bankr. M.D. Ga.
1989) (in light of fact that Chapter 11 and Chapter 12
debtors plan to retain collateral to produce income, secured
claim equaled amount of stipulated fair market value without
deduction for hypothetical liquidation costs); cf. In re
Davis, 14 B.R. 226 (Bankr. D. Me. 1981) ("Where a confirmed
chapter 11 reorganization plan contemplates retention of the
collateral by the debtor for use in its ongoing business
operations, collateral . . . should be ascribed its fair
market value[,]" but reasonable costs of sale deducted in
valuing security interest) (Cyr, J.).

3. See, e.g., In re Demakes Enters., Inc., 145 B.R. 362, 365
(Bankr. D. Mass. 1992) (valuing meat processing plant at
liquidation value); In re Ledgemere Land Corp., 125 B.R. 58,
61 (Bankr. D. Mass. 1991) (bank's mortgage on Chapter 11
debtor's real property that debtor intended to retain and
eventually develop "is worth only what [property] will bring
at foreclosure"); In re Robbins, 119 B.R. 1, 5 (Bankr. D.
Mass. 1990) (valuing Chapter 11 debtor's investment property
at foreclosure value); In re T.H.B. Corp., 85 B.R. 192, 196
(Bankr. D. Mass. 1988) ("The fact that the Debtor is a going
concern is no reason to value the collateral under the going
concern standard unless it appears likely that the secured
party will actually receive that value from its collateral

-8- 8

their interpretation to the first sentence of 506(a),

reasoning that even if the debtor proposes to retain and make

profitable use of the collateral in the reorganized

enterprise, the statute commands a valuation of the

"creditor's interest" in the property -- i.e., of the lien --

and that value can only reflect what the creditor would be

entitled to recover from the collateral under non-bankruptcy

law. Thus, if the collateral is subject to the Uniform

Commercial Code, the creditor's interest would reflect what

it could recover from a commercially reasonable sale under

the U.C.C.; if real estate, then from a foreclosure sale,

perhaps with some value added if the creditor has the right

and the wherewithal to bid-in, hold and resell the property

on the open market. See, e.g., In re Tenney Village Co., 104

B.R. 562, 567 (Bankr. D.N.H. 1989) (valuing property at fair

market value because mortgage holder had ability to bid in

and obtain fair market value through later private sales); In

re Robbins, 119 B.R. 1, 5-6 (Bankr. D. Mass. 1990)

(recognizing second mortgage holder's bid-in rights but

declining to ascribe any value to them where circumstances

make it "unreasonable to expect" creditor to exercise them);

see generally James F. Queenan, Jr., Standards for Valuation

of Security Interests in Chapter 11, 92 Com. L.J. 18, 60



through a pending sale.")

-9- 9

(1987) (real estate mortgage holder's bid-in rights "should

be valued as an inherent part of his property interest").

We are persuaded that the first line of cases

correctly interprets the statute. This interpretation gives

meaning to both sentences of 506(a), and enables bankruptcy

courts to exercise the flexibility Congress intended. By

retaining collateral, a Chapter 11 debtor is ensuring that

the very event Winthrop proposes to use to value the property

-- a foreclosure sale -- will not take place. At the same

time, the debtor should not be heard to argue that, in

valuing the collateral, the court should disregard the very

event that, according to the debtor's plan, will take place -

- namely, the debtor's use of the collateral to generate an

income stream. In ordinary circumstances the present value

of the income stream would be equal to the collateral's fair

market value. Under such circumstances, a court remains

faithful to the dictates of 506(a) by valuing the

creditor's interest in the collateral in light of the

proposed post-bankruptcy reality: no foreclosure sale and

economic benefit for the debtor derived from the collateral

equal to or greater than its fair market value. Our approach

allows the bankruptcy court, using its informed discretion

and applying historic principles of equity, to adopt in each

case the valuation method that is fairest given the

prevailing circumstances.

-10- 10

The interpretation championed by the second line of

cases renders the second sentence of 506(a) virtually

meaningless. Moreover, it would allow a reorganizing debtor

to reap a windfall by stripping down the lien to liquidation

value and quickly selling the collateral at fair market

value, thus pocketing equity that would have been completely

beyond reach save for the filing of the bankruptcy petition.

Cf. Butner v. United States, 440 U.S. 48, 55 (1979)

(bankruptcy law should "prevent a party from receiving a

windfall merely by reason of the happenstance of bankruptcy")

(quotation omitted). It is true that the debtor's intention

to reorganize under Chapter 11 is what gives the collateral

its going-concern value. And while it is also true that,

absent a reorganization plan, the creditor might not recover

the difference -- assuming that there is in fact a difference

-- between the collateral's fair market value and the amount

recoverable through its state law rights, we would not

characterize this additional recovery as a "windfall" to the

creditor, and certainly not one that will spur secured

creditors to eschew their state law remedies and seek refuge

in the comfortable confines of the bankruptcy courts.

We find that the bankruptcy court correctly

interpreted 506(a) as according it flexibility in choosing

among possible standards of valuation, and properly applied

the statute to the particular facts of this case. Winthrop

-11- 11

proposes in its Plan to retain control of the Property and

continue using it in its nursery and landscaping business to

generate income. In light of this proposed use, the

bankruptcy court committed no error in valuing the Property

at its stipulated fair market value.

-12- 12

IV. IV.

CONCLUSION CONCLUSION

For the foregoing reasons, the order of the

district court is

Affirmed. Affirmed

-13- 13